DECISION
This is an action brought by the Department of Attorney General on behalf of the Retirement Board of the State of Rhode Island to terminate and revoke the pension of Raymond J. Azar ("Azar") who pled guilty to acts in breach of the public's trust while he served as Director of Public Works for the City of Cranston.
The Department of Attorney General asked this Court to invoke the sanctions of Section 36-10.1-1 et seq. of the Rhode Island General Laws (as amended) "Pension Revocation and Reduction Act" and seeks a total revocation of Azar's pension, with no payments to the City of Cranston, who is an intervenor and seeks a portion of said pension for payment of costs incurred as a result of the actions of Azar. The State also objects to any amounts of said pension to be paid for the benefit of the moderately retarded brother of defendant Azar, Dennis Azar ("Dennis").
Mr. Azar had thirty-one years in the State Retirement System in May 1992. On July 26, 1993, Azar pleaded guilty to one count of violating Section 17-15-1 et seq. for illegal activities occurring between January 1, 1987, and April 22, 1992, while serving as Director of Public Works for the City of Cranston.
He was sentenced to a term of ten years with five years to serve and five years suspended. After serving time at the Adult Correctional Institutions, Azar was placed in home confinement and work release. He is presently on parole and employed as a stock clerk earning a gross of approximately $250 a week. At his sentencing Azar was ordered to make restitution to the City of Cranston in the sum of $225,000, which sum was paid in full by October 14, 1993. This sum was raised by the sale of some of Azar's assets and by borrowing $80,500 from his brothers and sisters.
Mr. James M. Reilly, Deputy Director of the State Retirement System, testified that Azar has been receiving a pension under the provisions of Section 36-10.1-2 et seq. of the Rhode Island General Laws (as amended) since May 5, 1992. The present amount of said pension is $51,341 or $4,378 per month. There will be a reduction of said pension when Mr. Azar reaches sixty-two because he has opted for a single-life annuity with Social Security supplements. Until Azar reaches sixty-two years of age, there is a 3 percent anticipated increase to his pension effective each January. Mr. Azar's pension also has a death benefit of $4,000, the beneficiary of which is his sister, Rose Marie Canavan.
At the time his pension benefits began, Azar was fifty-three years and and eight months old. With over thirty years' service he could commence receiving his pension, under the statute, at that time.
Mr. Azar, as an employee, contributed $55,135.61 to his pension; the City of Cranston's contributions were about $82,000.
Mr. Reilly described that the Social Security Supplemental Option permitted a retired employee to receive a portion of his Social Security as if he had worked to age sixty-two. So, the retired employee would, before the age of sixty-two, receive a percentage of the amount that he would at age sixty-two. In this case, Azar received 54 percent, since May 5, 1992, of what he would have received in the way of Social Security benefits if he were sixty-two years old. Then, at age sixty-two, his pension would be reduced by the sum of $11,700 because of this early payout.
The City of Cranston makes a gross contribution each year for all of its employees — active and retired — based on a recommended actuarial figure — now 7 percent of its employees' total payroll. If Azar's pension was revoked, the City would not have to pay the 7 percent attributable to him. Nor would it have to contribute 3 percent toward the cost-of-living increase. But it also would not receive any of the monies it now claims are due the City to satisfy all of its costs attributable to Azar's actions.
While the State Retirement Board, through the Department of Attorney General, wants the pension of Raymond Azar revoked in its entirety, the City of Cranston seeks the sum of $210,000 from said pension to fully restore the City to its place financially prior to the illegal conduct of Raymond Azar. The testimony of Attorney Karen Finley, an attorney for the City, breaks this requested sum out as follows: (a) the amounts alleged in the indictment — total $350,522 less $225,000 paid; (b) total remaining $125,522 plus attorneys' fees — $31,278; (c) total now is $156,800; (e) total amount lost by the City of Cranston is $659,500, when divided by the $350,522 attributed to Mr. Azar, the percentage is .53; (f) audit costs for the City of Cranston were approximately $100,000 — multiplied by .53 equals Azar's share of $3,000, which, when added to $156,800, equals $209,800 or $210,000 (rounded). The City has commenced a separate civil action in the United States District Court for the District of Rhode Island to recover this sum.
Dennis Azar
It is uncontradicted that Azar lives in the family home, formerly occupied by his late mother and father, and cares for his brother, Dennis, who is moderately retarded. Raymond Azar has been caring for his brother for many years.
It is uncontradicted and corroborated by Mr. Raymond Azar's sister, Rose Marie Canavan, as well as the Guardian ad Litem for Dennis, Attorney John Baglini, that Dennis is totally dependent on Raymond Azar. Mr. Baglini testified that the answers to interrogatories indicating Dennis's expenses were "reliable estimates."
In addition to the sum of $399, which Dennis receives from Social Security, Mr. Baglini testified that Mr. Dennis Azar should receive, from Mr. Raymond Azar's pension, the sum of $1500 per month to satisfy the expenses of Dennis.
Raymond Azar
Defendant Raymond Azar's position is that he is willing to pay from his pension the sum of $210,000 to the City of Cranston, at which time the separate action in the United States District Court of the District of Rhode Island would be dismissed, and that said sum be paid monthly after taxes, if any, and after the sum of $1500 is placed in a "trust" for the use and support of his brother Dennis. Mr. Raymond Azar, at some point in the future, would seek, after the City has been reimbursed the sum of $210,000, what pension benefits are remaining less the $1500 stipend for the benefit of his brother Dennis.
Mr. Raymond Azar testified that he did commit the illegal acts as set forth in the indictment, that he did plead guilty to these charges, that he agreed to pay restitution to the City of Cranston in the sum of $225,000, and that he did in fact pay said sum in two payments by selling his house in New Hampshire, liquidating assets, and borrowing $80,500 from his brothers and sisters. In addition, Azar testified that he served two years, was denied parole upon his first application, and was placed on parole when he again applied — his present status.
Mr. Raymond Azar expressed remorse at his illegal activities and was candid in his admission and the humiliation he sustained as a result of his illegal conduct. Mr. Raymond Azar, who is a professional engineer, had his license suspended by the Board of Professional Engineers for ten years, making it impossible for him to reapply to practice his profession until the year 2003.
Mr. Azar's sister, Rose Marie, testified that on the occasion of Azar's arrest, Azar met with his family and candidly admitted to his illegal activities.
It appears uncontradicted that of thirty years of public service, said illegal activity occurred over a period of five years, i.e., from 1987 to 1992.
Decision
The operative statute in this case is the "Pension Revocation and Reduction Act" (Section 36-10.1-1 et seq. of the Rhode Island General Laws (as amended)).
Said statute requires that whenever a public official is convicted or pleads guilty to any crime related to his public office, the State Retirement Board must initiate a civil action for the revocation or reduction of his retirement or other benefit or payment to which the public official was otherwise entitled (Section 36-10.1-3(B)). The Superior Court is required under the provisions of Section 36-10.1-3(C) to: (1) determine whether the public employee has been convicted of or pleaded guilty to a crime relating to his public office; (2) whether the retirement or any other benefits to which the public official was otherwise entitled should be revoked or diminished; (3) and if soby what amount or what proportion such revocation or reduction should be ordered. (Emphasis added.)
The Court, in rendering its decision, must consider these factors: (a) the fact that the retirement benefits of this public official were permitted under a provision of our Rhode Island General Laws and that such retirement or other benefits presume that such service shall have been honorably rendered; (b) the severity of the crime related to the respondent's public office; (c) the amount of loss sustained by the public employee's employer; (d) the degree of public trust in the respondent public official as a result of his public office; and (e) "any such other factors as, in the judgment of the Superior Court, justice may require." (Emphasis added.)
Paragraph (D) of section 36-10.1-3 permits the Superior Court "in its discretion" to order ". . . that some or all of the revoked or reduced benefits or payments be paid to any . . . dependent or beneficiary as justice may require."
Pursuant to paragraph (E) the Superior Court may determine
that the retirement or other benefits of a public official shall not be revoked or reduced and, if so, the record shall indicate that the initiation of a civil action had not, in fact, occurred. (Emphasis added.)
Review of Factors
(a)
In Reviewing the first factor this Court finds that respondent Raymond Azar was entitled to a pension benefit pursuant to section 36-10.1-2 et seq. (as amended) and that the retirement benefit was premised upon honorable service duly rendered as Director of the Department of Public Works for the City of Cranston.
(b)
This Court finds that respondent Azar has duly admitted to committing serious crimes related to his fiduciary duty as Director of the Department of Public Works for the City of Cranston by receiving bribes from contractors who were allowed to overbill the City of Cranston by Azar for work never performed for the benefit of the City or its citizens. The Court finds that the nature of his crimes were serious, but this finding is tempered by the fact that they appear to have occurred during the last five years of a thirty-year career in public service, and that respondent Azar has admitted the crimes, has been sentenced for the commission of said crimes, has served two years of a ten-year sentence, and is presently on parole.
(c)
The Court finds that the monetary loss sustained by the City of Cranston was initially $225,000, which sum has been repaid the City of Cranston by respondent Azar. Furthermore, the actual and final accounting of the loss to said City is an additional sum of $210,000, which respondent Azar acknowledges and is willing to pay the City from the proceeds of his pension.
(d)
There is no question in this Court's opinion that a high degree of public trust was placed with this public official in his capacity as Director of the Department of Public Works with broad powers to engage in contracts and other binding obligations on behalf of the City of Cranston.
(e)
The Court believes that the following facts must be taken into consideration in rendering a decision in this matter.
First, the Court considers the accepted plea of guilty of respondent Azar to the criminal charges in which he pled openly to criminal misconduct permitted by him during the last five years of his public employment and privately admitted to such crimes to his family. While not diminishing the nature and extent of Azar's crimes, this Court takes notice that such admission of guilt, both personally and publicly, avoided the expense and length of a public trial and the wrenching emotions following therefrom.
Second, and unlike many other cases, the monetary loss to the City of Cranston was quantifiable and despite an original dispute as to the amount of restitution, the Court ordered the sum of $225,000 as restitution, which sum was paid by respondent Azar. The City of Cranston now seeks an additional sum of $210,000, which respondent Azar is willing to pay from his retirement benefits. This Court believes that one of the reasons for the passage of the Pension Revocation and Reduction Act was to prevent a public official who is guilty of a breach of trust and undertakes illegal acts from benefitting therefrom.
This Court is convinced that the payment of said $210,000 to the City of Cranston is appropriate and necessary to repay, in full, the loss sustained by the City of Cranston and its taxpayers. To do otherwise would be, in this Court's opinion, in contravention of the intent and spirit of Section 36-10.1-3 of the Rhode Island General Laws (as amended), particularly paragraph (C), subparagraph (c).
This Court also believes that it is necessary to invoke paragraph (D) of said section 36-10.1-3 as to respondent's brother Dennis. Despite the misconduct of respondent Raymond Azar, this Court is impressed with the loving care rendered Dennis Azar by Raymond Azar and the other members of the Azar family. Absent that, Dennis Azar would be, if not institutionalized, placed in a group home at significant cost to the State of Rhode Island. To deny a certain portion of the retirement proceeds for the health, welfare, and benefit of the said Dennis Azar would also be in contravention of the intent of paragraph (D). This Court acknowledges the diligence of the court appointed Guardian ad Litem in this matter and accepts said guardian's findings as its own. This Court believes that the sum of $1500 a month should be paid in trust for the benefit of Dennis Azar. This Court also believes and accepts the guardian's recommendation that the trustee for payment of said funds be respondent, Raymond Azar, there being no reason to deny this caring and loving brother the continued right, obligation, and burden to care for his moderately retarded sibling.
Order
Therefore, after considering all of the facts and circumstances in this case, including equitable considerations and the law, as well as balancing the public right, remedial action, and dependent need, this Court orders as follows:
I
That the pension retirement benefit due respondent Raymond Azar is hereby revoked and any sums that would have been due Raymond Azar thereunder are to be paid by the State Retirement Board as follows:
(a) The sum of $1500 per month shall be paid by the State Retirement System, in trust, to respondent Raymond Azar, who shall serve as trustee for his brother Dennis Azar, as long as said Dennis Azar is alive or said sum is available to be paid from said retirement benefit, or until the death of the said Raymond Azar, whichever event shall first occur. Raymond Azar shall provide this Court a yearly accounting of said funds.
(b) The balance of any monthly sum due in the way of retirement benefits to respondent Raymond Azar shall be paid by the State Retirement System to the Treasurer of the City of Cranston until the sum of $210,000 has been paid said City to reimburse it in full for the expenses and losses incurred by the City of Cranston as the result of the misconduct of Raymond Azar, and that said payment shall continue until said sum of $210,000 is paid or that said benefits cease as a result of the death of Raymond Azar.
(c) As a result of said payment, the complaint in the United States District Court for the District of Rhode Island brought by the City of Cranston against the said Raymond Azar shall be dismissed by the City with prejudice pursuant to the stipulation entered into between said Raymond Azar and said City of Cranston.
(d) Once the City of Cranston is paid the sum of $210,000, then the remaining portion of said monthly pension, after deducting the monthly sum of $1500 for the benefit of Dennis Azar in accordance with paragraph (a) above, shall be paid to the brothers and sisters of the respondent Raymond Azar, or their estates, until their loan to him in the amount of $80,500, or any balance due thereon, has been paid in full or until said pension shall cease upon the death of Raymond Azar, whichever event shall first occur.
(e) Once the obligations to the City of Cranston and to the brothers and sisters of the said Raymond Azar have been paid in full, then the said Raymond Azar may receive the balance of the monthly proceeds after the deduction of the sum of $1500 per month for the benefit of his brother Dennis in accord with paragraph (a) hereof and to the extent of said payments to Raymond Azar, his pension/retirement benefits are reinstated.
The attorneys for the State Retirement Board, Raymond Azar, and the City of Cranston shall collaborate and prepare a judgment consistent with this decision.